# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| | | DATE | 12/10/2001 |
| CASE NUMBER | 01 C 7202 | | |
| CASE TITLE | SK-PALLADIN PARTNERS, LP vs. PLATINUM ENTERTAINMENT, INC. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss the appeal [12-1] is denied. The bankruptcy court's order of August 28, 2001 confirming the First Amended Joint Plan of Reorganization of Platinum Enterprises, Inc. is affirmed. Palladin has failed to show the bankruptcy court's factual findings were clearly erroneous, its evidentiary rulings were an abuse of discretion, or that its conclusions of law were an error. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | |
|---|---|---|---|---|
| | No notices required. | | **DEC 1 3 2001** | |
| ✓ | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | docketing deputy initials | |
| | Docketing to mail notices. | | 12/11/2001 | |
| ✓ | Mail AO 450 form. | | date mailed notice | |
| ✓ | Copy to bankruptcy judge. | 01 DEC 12 PM 6:37 | | |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | CB mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SK-PALLADIN PARTNERS, L.P. | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 7202 |
| | ) | |
| | ) | Suzanne B. Conlon, Judge |
| v. | ) | |
| | ) | |
| PLATINUM ENTERTAINMENT, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Platinum Entertainment, Inc. ("Platinum") filed a Chapter 11 petition on July 26, 2000. On June 15, 2001, Platinum and the Official Committee of Unsecured Creditors ("the committee") proposed a First Joint Amended Plan of Reorganization ("joint plan"). On August 28, 2001, the bankruptcy court entered its findings of fact and conclusions of law, confirmed the joint plan, and overruled the objections of S-K Palladin Partners, L.P. ("Palladin"). *In re Platinum Entertainment, Inc.*, No. 00-B-21646 (Wedoff, J.). Palladin appeals. Platinum and the committee respond and move to dismiss the appeal as moot.

## BACKGROUND

As a public company, Platinum's primary business was the production, distribution, marketing, and sale of recorded music. On June 30, 2000, Platinum's board of directors held its final meeting. Prior to that meeting, Platinum's obligations to First Source Financials, Inc. ("First Source"), its secured lender, had fully matured. Platinum had defaulted on that obligation and was

1

at risk of forfeiture. Platinum was not actively operating its business and most of its employees had been terminated. The board authorized Thomas Leavens, a Platinum officer, to effect an orderly transfer of Platinum's assets to First Source, and take other appropriate action including the filing of a bankruptcy petition. Immediately thereafter, the directors resigned from the board, and new directors were never appointed.

Platinum filed its Chapter 11 bankruptcy petition on July 26, 2000. The bankruptcy court authorized Platinum to retain Tudor Management Group ("Tudor"), the board's prior consultant, to render management and consulting services to Platinum. Platinum and Tudor prepared offering memorandum for the assets, placed advertisements in entertainment industry publications, and retained a publicity agent to conduct marketing for the assets. Platinum received only two written expression of interests for its music catalog, which did not result in a sale because the catalogue had been inactive for 18 months. Consequently, Platinum determined the catalogue's liquidation value at $15 million.

Meanwhile, Platinum commenced settlement negotiations with The Harry Fox Agency, Inc. ("Harry Fox") to resolve pre-bankruptcy class action suits. Harry Fox initiated those suits on behalf of copyright owners when Platinum failed to pay its royalties. Platinum and Harry Fox reached a settlement agreement conditioned on the approval of class members and subject to confirmation of the joint plan. Platinum and the committee proposed the joint plan, which called for: (1) reorganization of Platinum's legal and financial affairs; (2) resumption of Platinum's business; (3) immediate deposit of $1 million for payment of unsecured claims, and (4) payment of $2 million to fund the Harry Fox settlement. First Source agreed to fund the joint plan.

On July 18, 2001, Palladin, a Class 3 holder of unsecured claims, objected to the joint plan.

2

Palladin argued the joint plan was proposed in violation of Delaware law, and the joint plan did not serve the best interest of creditors under 11 U.S.C. § 1129(a). On July 26, 2001, the bankruptcy court overruled Palladin's objections. In its final order confirming the joint plan, the bankruptcy court determined the committee had authority to propose the joint plan. Tr., Vol. I., Ex. 2, at 4-5. Moreover, the bankruptcy court held the record evidence demonstrated the joint plan satisfied the best interest of the creditors. *Id.*

## DISCUSSION

### I. Mootness

As a preliminary matter, Platinum argues the appeal should be dismissed on mootness grounds. Platinum contends the joint plan has been substantially implemented, and Palladin failed to obtain a stay of judgment pending appeal. "[A] court may consider a challenge to a reorganization plan moot and unreviewable when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *In re Andreuccetti*, 975 F.2d 413, 418 (7th Cir. 1992). In determining whether an appeal is moot, a court must weigh the interests of finality, the extent of the plan's consummation, and the degree to which circumstances have changed and impacted the potential for effective relief. *Id.* "[T]he reviewing court must scrutinize each individual claim, testing the feasibility of granting relief against the potential impact on the reorganization scheme as a whole." *Id.* Substantial consummation of the reorganization plan is not determinative of mootness. *Id.* The court must consider the circumstances of the case to decide whether it can grant effective relief. *Id.*

Platinum contends the following action precludes an appeal of the bankruptcy court's

3

confirmation order: First Source's funding of the joint plan in the amount of $3,635,000; disbursement of 509 checks totaling $188,944.21 to copyright owners; a settlement agreement in the Harry Fox class action suits, and the resumption of Platinum's business. Mot. Dismiss at 2. In *In re 203 N. La Salle St. Partnership*, 126 F.3d 955 (7th Cir. 1997), *rev'd on other gds.*, 526 U.S. 434 (1999), the court concluded a bankruptcy appeal was not moot because the transactions of the reorganization plan could be reversed. *203 N. LaSalle*, 126 F.3d at 960. Where the bankruptcy court could "fashion some form of relief that would not unduly benefit third parties," the appeal was not moot. *Id.* Although the debtor had implemented the plan, investors had placed capital into the reorganized debtor, and third parties had spent significant amounts of money, the court determined the bankruptcy court could find a relief that would not unduly burden third parties. *Id.* Significantly, the court relied on the appellant's stipulation that it would not seek reversal of post-confirmation transactions. *Id.* Moreover, in *Andreuccetti*, the court refused to dismiss an appeal as moot because the plan had not been fully implemented, and creditors remained unpaid. *Andreuccetti*, 975 F.2d at 419.

On appeal, Palladin asks this court to direct the bankruptcy court to determine the appropriate value of Platinum's music catalogue without the specter of the Harry Fox class action suits that purportedly lowered its value. Resp. Mot. Dismiss. at 14. Palladin states that remedy would not disturb the Harry Fox settlement, and it will not seek to undo the settlement agreements. *See 203 N. LaSalle*, 126 F.3d at 961. Moreover, Palladin stipulates to allowing post-confirmation transactions to remain in place. *Id.*; *see Andreuccetti*, 975 F.2d at 419. Under those circumstances, the bankruptcy court could fashion relief without significantly harming third parties. Although Palladin did not request a stay of the confirmation order pending appeal, a stay is not mandatory to defeat a

4

mootness challenge. *203 N. LaSalle*, 126 F.3d at 960; *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir. 1994). Finally, the joint plan has not been fully implemented because unsecured creditors have not been paid. *See Andreuccetti*, 975 F.2d at 419. Paladin contends the appeal is moot because it spent a substantial period of time in the bankruptcy court. *Andreuccetti* expressly rejected that argument. *Id.* at 418. Because the bankruptcy court could fashion some form of relief, the motion to dismiss must be denied. Accordingly, the court reviews the merits of the confirmation order.

## II. Standard of Review

Subject matter jurisdiction over this bankruptcy appeal is established under 28 U.S.C. § 158(a)(1). Review of a bankruptcy court's factual findings is subject to a clearly erroneous standard, while review of its conclusions of law is *de novo*. Fed. R. Bankr. P. 8013; Fed. R. Civ. P. 52. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985) (internal citations omitted). This standard requires the court to give deference to the bankruptcy court. If the bankruptcy court's account of the evidence is plausible, a reviewing court may not reverse even if it would have weighed the evidence differently as trier of fact. *In re John Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). The bankruptcy court's evidentiary rulings must remain undisturbed absent an abuse of discretion. *In re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998).

## III. Confirmation of the Joint Plan under 11 U.S.C. § 1129(a)

Palladin argues the Joint Plan was proposed in violation of 11 U.S.C. § 1129(a)(3). Section 1129(a)(3) dictates "the joint plan must be proposed in good faith and not by any means forbidden by law." The bankruptcy court determined the creditor's committee had standing to propose the plan

under the bankruptcy code. Tr., Vol. XII, Ex. 14, at 10. The committee is authorized to propose a plan of reorganization under 11 U.S.C. § 1121(c) with or without Platinum. Section 1121(c) provides:

> Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if –
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter.

11 U.S.C. § 1121(c).

Platinum failed to propose a reorganization plan during the 120-day period. Thus, the committee was authorized to propose the joint plan. In response, Palladin asserts the plan confirmation does not comply with Delaware law.[1] Section 141(a) of Delaware Corporation Law provides, in relevant part, "The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of the board of directors, except as may be otherwise provided in this chapter." Del. Code. Ann. tit. 8, § 141 (2000). Palladin's argument misses the mark. While Palladin disputes Platinum's authority to propose the joint plan, Palladin fails to recognize the committee has independent authority to propose a reorganization plan. Thus, Platinum's role in proposing the joint plan does not affect the validity of the plan. Palladin does not contest the committee's standing to propose the plan under the bankruptcy code. The bankruptcy court correctly ruled Palladin's objection to Platinum's standing was immaterial because the committee was authorized to propose the plan under 11 U.S.C. § 1129(a)(3). The bankruptcy court determined "even if everything [Palladin is] saying regarding the propriety of the debtor's action in proposing this plan were correct it would have no impact on the confirmability of the plan that's

---

[1] The parties agree Delaware law is applicable.

6

before the court because it was also advanced by a party that unquestionable has standing[.]" Tr., Vol. XII, Ex. 14, at 14-15. Palladin asserts the committee was added solely to bolster the legality of the proposed plan. Reply. Br. at 8-9. As evidence, Palladin offers the committee's lack of participation at the hearing by not calling its own witnesses, and cross-examining only one witness. Remarkably, Palladin itself did not call witnesses at the hearing. In light of the express provisions of § 1121(c), Palladin's assertions are frivolous.

Moreover, Platinum's board expressly authorized Thomas Leavens, a Platinum officer, to file a bankruptcy petition to maximize the distribution to creditors. *See Ownby v. Jim Beck, Inc.*, 214 B.R. 305, 308 (W.D. Va. 1997) (board's president had authority to propose a reorganization plan under direction of the board). The minutes of the final board meeting state: "the Board authorized and empowered Thomas R. Leavens, in the name and on behalf of the Company, to effect an orderly transfer of the assets of the Company . . . including the filing of a petition under the Bankruptcy Code[.]" Reply. Br., Ex. A. Leavens acted under the board's direction, in conformity with Delaware law. Del. Code Ann. tit. 8, § 141. Palladin's reliance on *In re Dark Horse Tavern*, 189 B.R. 576, 583 (N.D.N.Y. 1995) is inapposite. In *Dark Horse*, the court refused to confirm a reorganization plan because the board was deadlocked over the future of the business. *Dark Horse* did not address a board's express grant of authority to file a bankruptcy petition. *Id.* Palladin asserts the board granted Leavens authority to file a Chapter 7 petition, not a Chapter 11 petition. Reply. Br., Ex. A. The plain language of the board's minutes does not render that conclusion. Instead, the board authorized Leavens to effect a transfer of assets to First Source "in such a manner as such officer shall determine will maximize the value of the assets[.]" *Id.* Thus, Leavens was given discretion to file a Chapter 11 petition. *See In re FSC Corp.*, 38 B.R. 346, 347-50 (Bankr. W.D. Pa. 1983)

7

(bankruptcy case could proceed under Delaware law despite the absence of a board of directors); *In re Gaslight Club, Inc.*, 782 F.2d 767, 771-72 (7th Cir. 1986) (discussing *FSC Corp.*).

In sum, the committee had standing to propose the plan under the bankruptcy code. The board provided express direction for the initiation of bankruptcy proceedings. Consequently, the bankruptcy court's confirmation order did not violate § 1129(a)(3).

## II. Best Interests of Creditors

Palladin contends the joint plan fails to satisfy the best interest of creditors under 11 U.S.C. § 1129(a)(7). Pursuant to §1129(a)(7), each of the creditors in a Chapter 11 reorganization must receive at least as much as they would under a Chapter 7 liquidation. *203 N. LaSalle*, 126 F.3d at 968. Specifically, Palladin asserts the Harry Fox class action suits diminished the value of Platinum's music catalogue. According to Palladin, the bankruptcy court erred by closing discovery and denying the admission of appraisals that purportedly demonstrated the value of the music catalogue was higher; and not taking into account the music catalogue value after settlement of the Harry Fox class action suits.

The bankruptcy court's decision to exclude evidence is reviewed for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 140 (1997). The bankruptcy court excluded appraisals prepared by Kagan Media Appraisals, Inc. ("Kagan") at the confirmation hearing over Palladin's objections. The court determined the Kagan appraisals were hearsay, and Palladin failed to designate the appraiser as a witness. *See Waddel v. Commissioner*, 841 F.2d 264, 267 (9th Cir. 1988) (appraisal is hearsay when no foundation is provided for business record exception). Palladin argues the bankruptcy court arbitrarily closed discovery on July 26, 2001, making it impossible to depose the

appraiser.[2] The joint plan was filed on June 15, 2001. The bankruptcy court allowed discovery to proceed until July 26, 2001. Three days before the hearing, Palladin served Platinum with a document request seeking nineteen categories of documents. Palladin appeared at the hearing on July 26, 2001 and stated appraisals were forthcoming from Platinum. Tr., Vol. VII, Ex. 14, at 19. Palladin requested an extension of discovery. When the bankruptcy court asked Palladin for an estimated discovery time, Palladin responded: "It's not something I don't think that can be done in two weeks, six weeks or even two months." *Id.* The court asked Palladin if it had retained valuation experts. Palladin stated it had not. The court responded: "Your casual reference to the need for months to take discovery runs completely contrary to the manner in which bankruptcy cases are pursued." *Id.* at 20. The bankruptcy court denied an extension of the discovery schedule because Palladin had been "less than diligent" in pursuing discovery. *Id.* at 19. Palladin failed to request timely discovery of the Kagan appraisals, retain its own valuation experts, depose a Kagan witness, and request extension of the discovery period before the scheduled confirmation hearing. *Id.* at 19-20. Nevertheless, the court delayed the hearing until August 21, 2001 to allow Palladin to review documents produced in response to its discovery request.

Palladin's assertions on appeal are meritless. The bankruptcy court's finding that Palladin failed to perform discovery with due diligence has some support in the record. That resulted in Palladin's inability to offer the Kagan appraisal at the hearing. Nor did Palladin offer its own expert testimony on the value of Platinum's music catalogue. Indeed, the court noted Palladin was aware of Platinum's position on the music catalogue prior to July 26, 2001. *Id.* at 21. Palladin had

---

[2] Kagan is headquartered in California and could not be compelled to appear at the hearing in Illinois. Fed. R. Civ. P. 45(b)(2), 45(c)(3).

9

one month to conduct necessary discovery. Without a Kagan witness, the appraisals were correctly barred as inadmissible hearsay. A court may reverse discretionary evidentiary rulings when "no reasonable person could agree with the bankruptcy court." *In re Geraci*, 138 F.3d at 319. Palladin fails to make that showing on appeal. Consequently, the bankruptcy court's ruling was not an abuse of discretion.

The bankruptcy court's factual determinations on the value of Platinum's assets are reviewed for clear error. Fed. R. Bankr. P. 8013. Palladin asserts the bankruptcy court improperly valued the music catalogue at $15 million when the Kagan appraisals listed them at $60 million. However, the Kagan appraisals were properly excluded as hearsay. Palladin did not offer admissible evidence to support its asserted value of the music catalogue. Nor does Palladin point to any record evidence in its appellate brief. Instead, Palladin offers unsupported assertions that the music catalogue's value must be higher because the Harry Fox class action suits were settled. App. Br. at 13-14. The bankruptcy court noted First Source's $33 million secured claim and all administrative claims must be paid before other creditors. Extensive efforts to sell Platinum's assets proved fruitless. The bankruptcy court determined that was a "strong indication that the assets were not worth more than $33 million." Tr., Vol VII, Ex. 17, at 57. Moreover, the bankruptcy court relied upon the only evidence of valuation presented at the hearing – Platinum's submission that the music catalogue was worth $15 million. Tr., Vol. I, Ex. 2A, Attachment A. Because Platinum's submissions were uncontroverted, the bankruptcy court reasonably relied on that evidence. Consequently, the bankruptcy court's factual finding was not clear error.

## CONCLUSION

The motion to dismiss the appeal is denied. Palladin has failed to show the bankruptcy court's factual findings were clearly erroneous, its evidentiary rulings were an abuse of discretion, or that its conclusions of law were in error. Accordingly, the bankruptcy court's order of August 28, 2001 confirming the First Amended Joint Plan of Reorganization of Platinum Enterprises, Inc. is affirmed.

December 10, 2001

ENTER:

Suzanne B. Conlon
United States District Judge